**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ELIZABETH PAGE BAILEY,

        Plaintiff,

v.                               Case No. 3:25-cv-8-JRK

FRANK BISIGNANO,
Commissioner of Social Security,[1]

        Defendant.

_____

## <u>OPINION AND ORDER</u>[2]

### I.   Status

Elizabeth Page Bailey ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of neurologic tremors, chronic fevers, joint pain, coordination issues, numbness in her hands and feet, Lyme disease, hypothyroidism, bacteria biofilm, cognitive issues, and memory loss. Transcript of Administrative

---

[1] Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. <u>See</u> Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

Proceedings (Doc. No. 7; "Tr." or "administrative transcript"), filed March 4, 2025, at 93, 104, 299. Plaintiff protectively filed an application for DIB on March 11, 2022, alleging a disability onset date of March 28, 2017.[3] Tr. at 219-20. The application was denied initially, Tr. at 104-18, 119, 137-40, and upon reconsideration, Tr. at 92, 93-103, 143-45.

On April 12, 2024, an Administrative Law Judge ("ALJ") held a hearing,[4] during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 31-53. During the hearing, Plaintiff amended her alleged disability onset date to June 26, 2021. Tr. at 36. On June 14, 2024, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 11-24.[5]

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief authored by her lawyer. See Tr. at 5-6 (Appeals Council exhibit list and order), 213-15 (request for review), 401-02 (brief). On November 13, 2024, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4,

---

[3]     The DIB application summary indicates it was actually completed on March 14, 2022. See Tr. at 219. An application acknowledgment letter suggests the DIB application was submitted on March 11, 2022. Tr. at 221-32. The protective filing date for the DIB application is listed elsewhere in the administrative transcript as March 11, 2022. See, e.g., Tr. at 93, 104.

[4]     The hearing was held via telephone with Plaintiff's consent. See Tr. at 33-34, 166-67, 183-84, 190, 191.

[5]     The administrative transcript also contains a ALJ decisions dated June 25, 2021 and February 24, 2020, respectively, that adjudicated an earlier-filed claims for DIB. Tr. at 57-68, 77-87. Those decisions are not at issue here.

thereby making the ALJ's Decision the final decision of the Commissioner. On January 3, 2025, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues the ALJ erred in failing "to account for the 'total limiting effects' of Plaintiff's severe impairments, in particular her persistent and significant fatigue and cognitive deficits, well-documented effects of her Lyme disease." Plaintiff's Brief—Social Security (Doc. No. 9; "Pl.'s Br."), filed April 3, 2025, at 1 (emphasis omitted); see id. at 4-23. On July 3, 2025, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 15; "Def.'s Mem.") addressing Plaintiff's argument. Then, on July 17, 2025, Plaintiff's Reply Brief—Social Security (Doc. No. 16; "Reply") was filed. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further proceedings.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal

---

[6]      "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

(Continued…)

Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 13-24. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since June 26, 2021, the amended alleged onset date." Tr. at 13 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: neurological tremors, Lyme disease, babesia, bartonella, a neurocognitive disorder, and a somatic symptom disorder." Tr. at 13 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.]

---

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

- 4 -

Part 404, Subpart P, Appendix 1." Tr. at 14 (emphasis and citation omitted).

> The ALJ determined that Plaintiff has the following RFC:
>
> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b) except she can occasionally perform postural activities (climbing, balancing, stooping, kneeling, crouching, and crawling), and she should not have concentrated exposure to vibrations, work around moving mechanical parts, or work at unprotected heights. She is limited to performing work which needs little or no judgment to do simple duties, that can be learned on the job in a short time (i.e., up to and including 30 days), and she is able to deal with the changes in a routine work setting. [Plaintiff] is able to relate adequately to supervisors, with occasional coworker and general public contact. She is limited to work settings that do not require production-paced work.

Tr. at 16 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "veterinarian" and a "marketing director." Tr. at 23 (some emphasis and citation omitted). The ALJ then proceeded to step five. After considering Plaintiff's age ("46 years old . . . on the amended alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 23 (emphasis and citations omitted), such as "merchandise marker," "routing clerk," and "router," Tr. at 24 (emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from

- 5 -

June 26, 2021, through the date of th[e D]ecision." Tr. at 24 (emphasis and citation omitted).

### III.    Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against

the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.    Discussion

Plaintiff argues the ALJ erred in failing "to account for the 'total limiting effects' of Plaintiff's severe impairments, in particular her persistent and significant fatigue and cognitive deficits, well documented effects of her Lyme disease." Pl.'s Br. at 1 (emphasis omitted); <u>see</u> <u>id.</u> at 4. Within this general argument, Plaintiff contends the ALJ erred in failing to evaluate the June 10, 2021 opinion of Shane S. Bush, Ph.D., a neuropsychologist in Long Island, New York, who examined Plaintiff as part of her seeking specialty treatment for her various ailments. <u>Id.</u> at 15, 17; Reply at 3-4; <u>see</u> Tr. at 757-70 (Dr. Bush's report). Plaintiff also argues the ALJ erred in evaluating the opinion of Darrin J. Kirkendall, Ph.D., a psychologist who examined Plaintiff on March 18, 2023 at the request of the state agency. Pl.'s Br. at 18-19; <u>see</u> Tr. at 1380-85 (Dr. Kirkendall's report). Finally, Plaintiff asserts the ALJ erred in evaluating her statements regarding her symptoms and limitations. Pl.'s Br. at 19-23; Reply at 4-6.

Responding, Defendant argues the ALJ was not obligated to evaluate Dr. Bush's report because it does not qualify as a "medical opinion" under the regulations. Def.'s Mem. at 12-15. As to Dr. Kirkendall's opinion, Defendant contends the ALJ reasonably found it was not fully persuasive. <u>Id.</u> at 15-17.

Finally, Defendant argues that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints and RFC. Id. at 17-22.

As explained below, the undersigned finds the ALJ erred in failing to evaluate the findings of Dr. Bush that indeed constitute an "opinion" as defined by the Regulations. The matter must be reversed and remanded for consideration of this opinion in the first instance. Because Dr. Bush's opinion is largely consistent with Dr. Kirkendall's opinion and with Plaintiff's subjective complaints, the SSA's analysis of those matters could be affected on remand. Thus, if appropriate, those matters should also be reconsidered on remand.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20

C.F.R. §§ 404.1513(a)(2), 416.913(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"). Particularly regarding the mental demands of work activities, "medical opinions are about" matters "such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[7] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's]

---

[7] Plaintiff filed her application after the effective date of sections 404.1520c and 416.920c, so the undersigned applies the revised rules and Regulations.

disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).[8]

Here, Dr. Bush examined Plaintiff on June 10, 2021, just weeks before her amended alleged onset date of June 26, 2021. Tr. at 757. The examination lasted seven hours, with a 45-minute lunch break and another 10-minute break in the afternoon. Tr. at 763. In a thorough report, he documented Plaintiff's alleged "overwhelming physical and cognitive symptoms"; summarized results of approximately seventeen tests he administered; described the history of the presenting problem; reviewed Plaintiff's medical history (and records) and

---

[8] When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

medications; reviewed her educational, vocational, and social history, as well as an interview with her husband; summarized a mental status examination and behavioral observations; and made various conclusions regarding her functioning, prognosis, and ability to work. Tr. at 757, 757-67; see also Tr. at 768-70 (testing performance validity). Plaintiff argues—and Defendant does not dispute—that the ALJ failed altogether to evaluate the findings of Dr. Bush.[9] Defendant argues, however, that the ALJ did not err because Dr. Bush's findings do not qualify as a "medial opinion" as defined by the SSA. Def.'s Mem. at 12-15. Defendant acknowledges that "Dr. Bush provided diagnoses and various test results," but contends "he did not identify what Plaintiff could still do despite her impairments nor did he identify what, if any, limitations Plaintiff had in performing basic work activities." Id. at 13.

The undersigned determines that Dr. Bush's findings qualify as a medical opinion, and the ALJ erred by failing to address the opinion. As noted above, Dr. Bush's report is thorough and reflects a comprehensive examination. In his report, which is quite similar in form to many of the examining psychologist reports that are regularly accepted by the SSA as "opinions" (including Dr. Kirkendall's report in this case), Dr. Bush provided details on matters "such as

---

[9]     The ALJ did summarize Dr. Bush's report, Tr. at 18-19, but when it came time to assess the various "medical opinions and/or prior administrative medical findings," the ALJ did not at all mention Dr. Bush, Tr. at 21, 21-22.

- 11 -

understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Thus, the ALJ was required to at least explain how the consistency and supportability factors were considered. See 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). But, the ALJ did not provide any such analysis, frustrating judicial review.

In sum, the matter must be remanded for consideration of Dr. Bush's opinion.

## V.   Conclusion

In light of the foregoing, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)    Consider Dr. Bush's opinion in accordance with applicable regulations;

(B)    If necessary, reconsider the opinion of Dr. Kirkendall and Plaintiff's subjective complaints;

(C)    Take such other action as may be necessary to resolve this claim properly.

- 12 -

2.      The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on February 20, 2026.

_James R. Klindt_
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record